**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————

LUKAS KUBILIUS, VANESSA KAILEY, and
MAKAYLO VAN PEEBLES, *on behalf of themselves
and others similarly situated*,

        Plaintiff,                          Case No.:

                                         **CLASS ACTION COMPLAINT**

        v.

ARIZONA BEVERAGE COMPANY LLC,      **JURY TRIAL DEMANDED**

        Defendant.

——————————————————————

Plaintiffs LUKAS KUBILIUS, VANESSA KAILEY, and MAKAYLO VAN PEEBLES (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, ARIZONA BEVERAGE COMPANY LLC ("Defendant" or "Arizona"), allege the following:

<u>**NATURE OF THE ACTION**</u>

1.     This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Arizona beverages as having "No Preservatives."

2.     Defendant's "No Preservatives" representations are deceptive because Arizona beverages contain the preservatives citric acid and/or ascorbic acid. This labeling deceives

consumers into believing that they are receiving healthier, preservative-free beverages, but Defendant's products do not live up to these claims.

3. Conscious of consumers' increased interest in more nutritious beverages free of additives and willingness to pay more for products perceived to meet this preference, Defendant misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

4. Defendant sold and continues to sell beverages with deceptive or misleading labeling. These are:

1. Arizona Iced Tea with Lemon Flavor (citric acid and ascorbic acid in the bottle; citric acid only in the can). **Exhibit A**, pgs. 1-5.
2. Arizona Green Tea with Ginseng and Honey (citric acid and ascorbic acid). **Exhibit A**, pgs. 6-8.
3. Arizona Arnold Palmer Lite Half Iced Tea Half Lemonade (citric acid and ascorbic acid). **Exhibit A**, pgs. 9-12.
4. Arizona Peach Zero Calorie Iced Tea (citric acid and ascorbic acid). **Exhibit A**, pgs. 13-14.
5. Arizona Diet Peach Iced tea (citric acid and ascorbic acid). **Exhibit A**, pgs. 15-16.
6. Arizona Raspberry Half Iced Tea Half Lemonade (citric acid and ascorbic acid). **Exhibit A**, pgs. 17-18.
7. Arizona Cranberry Iced Tea (citric acid). **Exhibit A**, pgs. 19-20.
8. Arizona Grapeade (citric acid and ascorbic acid). **Exhibit A**, pgs. 21-22.
9. Arizona Half Iced Tea Half Lemonade (citric acid and ascorbic acid). **Exhibit A**, pgs. 23-24.
10. Arizona Peach Iced Tea (citric acid). **Exhibit A**, pgs. 25-26.
11. Arizona Raspberry Iced Tea (citric acid). **Exhibit A**, pgs. 27-28.
12. Arizona Energy Drink Extreme Performance Fruit Punch (citric acid and ascorbic acid). **Exhibit A**, pgs. 29-30.
13. Arizona Energy Drink Extreme Performance (citric acid and ascorbic acid). **Exhibit A**, pgs. 31-32.
14. Arizona Energy Drink Low Carb Performance (citric acid and ascorbic acid). **Exhibit A.**, pgs. 33-34.
15. Arizona Real Brewed Sweet Tea (citric acid). **Exhibit A**, pgs. 35-37.
16. Arizona Arnold Palmer Zero Half Iced Tea Half Lemonade (citric acid). **Exhibit A.**, pgs. 38-39.
17. Arizona Watermelon Fruit Juice (citric acid and ascorbic acid). **Exhibit A.**, pgs. 40-42.
18. Arizona Fruit Punch Fruit Juice (citric acid and ascorbic acid). **Exhibit A.**, pgs. 43-45.
19. Arizona Mucho Mango Juice (citric acid and ascorbic acid). **Exhibit A**, pgs. 46-48.

20. Arizona Rx Energy Herbal Tonic (citric acid and ascorbic acid). **Exhibit A**, pgs. 49-51.

21. Arizona Rx Stress Herbal Iced Tea (citric acid). **Exhibit A**, pgs. 52-53.

22. Arizona Zero Green Tea With Ginseng (citric acid and ascorbic acid). **Exhibit A**, pgs. 54-56.

23. Any other Arizona Products representing they have no preservatives despite containing citric acid, ascorbic acid, and/or any other kind of preservative (collectively, the "Products"; individually, a "Product")

5.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

6.      Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of New York, California, the other 48 states, and the District of Columbia.

7.      Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

*1)* Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;
*2)* Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
*3)* Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
*4)* Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
*5)* California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
*6)* Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.*;
*7)* Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
*8)* Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
*9)* District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
*10)* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
*11)* Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
*12)* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
*13)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
*14)* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;
*15)* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;
*16)* Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;
*17)* Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;
*18)* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § 445.901, *et seq.*;
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;
25) Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;
34) North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;
43) Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;
44) Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act;
45) Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;
47) Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.      This court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York State. The Products are advertised, marketed, distributed, and sold throughout New York State. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

*Plaintiffs*

11.     Plaintiff VANESSA KAILEY is, and at all times relevant hereto has been, a citizen of New York State and a resident of Kings County. On May 4, 2018, Plaintiff KAILEY purchased two Arnold Palmer Lite Half & Half Iced Tea Lemonades from a C-Town on 3632 Broadway, New York, NY for the premium price of $1.99 each.

12.     Plaintiff KAILEY purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff

KAILEY was injured when she paid money for a beverage that did not deliver the qualities it promised and misled her as to its contents. She paid the above sum on the assumption that she was purchasing a preservative-free beverage. She would not have been willing to pay the sum she paid had she known the Product actually had preservatives and was mislabeled. Defendant's "No Preservatives" labeling misled Plaintiff KAILEY into believing that she was purchasing a preservative-free beverage. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

13.     Plaintiff LUKAS KUBILIUS is, and at all times relevant hereto has been, a citizen of New York State and a resident of Suffolk County. On April 25, 2018, Plaintiff KUBILIUS purchased an Arnold Palmer Lite Half & Half Iced Tea Lemonade from a Walmart in East Setauket, New York for the premium price of $3.78.

14.     Plaintiff KUBILIUS purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff KUBILIUS was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. He paid the above sum on the assumption that he was purchasing a preservative-free beverage. He would not have been willing to pay the sum he paid had he known that the Product actually had preservatives and was mislabeled. Defendant's "No Preservatives" labeling misled Plaintiff KUBILIUS into believing that he was purchasing a preservative-free beverage. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving him of the benefit of her bargain and injuring

her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

15.     Plaintiff MAKAYLO VAN PEEBLES is, and at all times relevant hereto has been, a citizen of California and a resident of Los Angeles County. On April 28, 2018, Plaintiff VAN PEEBLES purchased a 23 oz. Arizona Green Tea with Ginger and Honey from a Ralph's Store located in Los Angeles County for the premium price of $0.93. On May 3, 2018, he purchased another 23 oz. Arizona Green Tea with Ginger and Honey on from a 7-Eleven located at 3330 Florence Avenue, Los Angeles, CA 90043 for the premium price of $0.99.

16.     Plaintiff VAN PEEBLES purchased the Products relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff VAN PEEBLES was injured when he paid money for a beverage that did not deliver the qualities it promised and misled him as to its contents. He paid the above sum on the assumption that he was purchasing a preservative-free beverage. He would not have been willing to pay the sum he paid had he known that the Product actually had preservatives and was mislabeled. Defendant's "No Preservatives" labeling misled Plaintiff VAN PEEBLES into believing that he was purchasing a preservative-free beverage. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving him of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

*Defendant*

17.  Defendant ARIZONA BEVERAGE COMPANY LLC is a corporation organized under the laws of New York with its principal place of business at 60 Crossways Park Drive, Suite

400, Woodbury, NY 11797. Defendant's registered agent is: National Registered Agents, Inc., 111 Eighth Avenue, New York, NY 10011.

18.     Defendant develops, markets Products throughout the United States. The Products are available at numerous retail and online outlets, including Target, Stop & Shop and Amazon.com.

19.     The advertising for the Products, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products based on those false representations, and misleads reasonable consumers, including Plaintiffs and the Class. Defendant owns, manufacture and distributes the Products and authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's "No Preservatives" Representation Is False and Misleading to a Reasonable Consumer

20.     Defendant misleads consumers into believing that the Products contain no preservatives with its false labeling claims to this effect. However, the Products actually contain citric acid and/or ascorbic acid, whose functions as preservatives have been well-documented. These ingredients function as preservatives in the Products.

21.     The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to

wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

22.     The citric acid and ascorbic acid in the Products have precisely this effect.

23.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1] The scientific evidence and FDA statements cited below establish that citric acid and ascorbic acid both tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product.

24.     Citric acid and ascorbic acid not fall into any of the regulatory exemptions from the definition of a preservative.

25.     The FDA expressly classifies citric acid and ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend

26.     Ascorbic acid is also listed on the FDA's regulatory listing of chemical preservatives. *See* 21 CFR § 182.3013 (Subpart D).

27.     The online magazine livestrong.com explains how ascorbic acid functions as a preservative:

> Preservatives are divided into three categories: Antimicrobials, antioxidants and ascorbic acid. Antimicrobials prevent bacterial, mold and yeast development. Antioxidants preserve fats, keeping them from going rancid. Ascorbic acid, more commonly known as vitamin C, falls in the third group as a preservative that stops foods from continuing to ripen, an aging process that leads to decay.
>
> **About Ascorbic Acid**
>
> Ascorbic acid is a water-soluble vitamin with antioxidant properties. Inside your body, the nutrient preserves cell integrity by neutralizing free radicals, which are toxic molecules that can damage healthy cells and cause disease.
>
> **Preserving Properties**
>
> Ascorbic acid neutralizes oxygen when it comes into contact with it. Oxygen allows foods to continue to ripen, an aging process similar to the one people go through that ends in death. Oxygen is also vital for many microorganisms to thrive, some of which cause decay. Ascorbic acid slows or neutralizes these events. The substance blocks cured meat's propensity to form carcinogens called nitrosamines, for example. In the process, the vitamin also preserves the flesh's red color. In addition, ascorbic acid preserves flavor.
>
> **Food-Preservation Mechanism**
>
> Canned vegetables, bottled juices, jams and other preserved fruit are processed foods manufacturers protect with ascorbic acid. The vitamin's acidity makes it hard for the enzyme phenolase to act. Phenolase accelerates oxidation, a chemical process in which oxygen level rises, resulting in decay. This is also the process that ascorbic acid combats.[2]

28.     Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a producer and

---

[2]http://www.livestrong.com/article/496950-is-ascorbic-acid-a-preservative/

supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[3]

29.      The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid and ascorbic acid are preservatives:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **EXHIBIT B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

30.      As described above in ¶¶ 21, 23, a preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods. Thus, it is not necessary that it function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency.

31.      However, citric acid and ascorbic acid do as a matter of fact function as preservatives in the Products.

32.      This is confirmed by Dr. Marc Meyers, a food scientist with a Ph.D., nearly thirty years, of experience in the field, multiple patents, and published work. *See* **Exhibit C**, Declaration of Dr. Marc Meyers ("Meyers Decl.") ¶¶ 3-20.

33.      Dr. Meyers observes that citric acid and ascorbic acid function as preservatives in a number of ways.

---

[3] http://www.fbcindustries.com/Citric_Acid.aspx

34. Citric acid and ascorbic acids are both anti-microbials. Both acids kill microbes by reducing the pH of products to which they are added. Meyers Decl. ¶ 27. Both can also kill microbes directly by penetrating the cell walls of microorganisms. Meyers Decl. ¶ 28.

35. Citric acid and ascorbic acid also serve as preservatives by functioning as sequestrants, removing compounds and elements from their environment so as to slow the degradation of food and beverages. Meyers Decl. ¶ 29.

36. These acids' effects include "delaying spoilage from bacteria, mold, fungi, and yeast; delaying changes in color, flavor, texture; and delaying browning and rancidity" over the shelf-life of a food or beverage product. Meyers Decl. ¶ 26.

37. Citric acid and ascorbic acid also function as antioxidants by sequestering metal ions (chelation), which prevents food deterioration and retards microbial growth. Meyers Decl. ¶ 29.

38. Citric acid serves as a preservative by functioning as an acidity regulator and acidulant. Meyers Dec. ¶ 22.

39. Dr. Meyers observes that while citric acid and ascorbic acid can also be employed by a manufacturer that intends to impart taste, a greater quantity of these substances is required to impart taste than to preserve foods and beverages. The preservative effects of these acids may be reduced at lower levels, but it will still be present. Meyers. Decl. ¶¶ 25-26.

40. Thus, Defendant cannot argue that it includes citric acid and ascorbic acid in the Products merely to impart added taste, because the quantities required to impart taste are more than sufficient to function as preservatives. Even if imparting taste is Defendant's primary motivation for including these acids, this subjective motivation has no bearing on their objective functioning.

41. Dr. Meyers also observes that citric acid and ascorbic acid function as preservatives in the Products specifically.

42. As to citric acid, Dr. Meyers states:

    a. Citric acid functions as a preservative in the Arizona Beverage Products by serving as acidulants, lowering their pH-level and thereby combatting microorganisms.

    b. Citric acid functions as a preservative in the Arizona Beverage Products by serving as an indirect antioxidant.

    c. Citric acid functions as a preservative in the Arizona Beverage Products by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect. Regardless of whether this is the primary purpose for which it is added to the Arizona Beverage Products, it still functions as a preservative by direct microbial effect, lowering pH levels, and acting as a sequestrant and indirect antioxidant.

    d. Citric acid functions as a preservative in the Arizona Beverage Products through sequestration, which prevents oxidation and impedes microbial growth.

    e. Citric acid serves these functions regardless of whether they are also being used as flavorants.

    f. The fact that Defendant may also employ other means of preserving the Arizona Beverage Products, like a hermetic seal, does not change citric acids' function as a preservative.

Meyers Decl. ¶ 36.

43. As to ascorbic acid, Dr. Meyers states:

    a. Ascorbic acid functions as a preservative in the Arizona Beverage Products by serving as an acidulant, lowering their pH-level and thereby combatting microorganisms.

    b. Ascorbic acid functions as a preservative in the Arizona Beverage Products by serving as an antioxidant.

    c. Ascorbic acid in the Arizona Beverage Products also infiltrates and then either weakens or kills microorganisms. Ascorbic acid also acts as a direct antioxidant, preserving the Arizona Beverage Products against microbial and chemical degradation. These antimicrobial effects exist over and above the antimicrobial effects of reducing pH levels.

    d. Ascorbic acid functions as a preservative in the Arizona Beverage Products as an antioxidant, which prevents oxidation and impedes microbial growth.

    e. Ascorbic acid serves these functions regardless of whether they are also being used as a flavorant or for nutrient fortification (as Vitamin C).

f.  The fact that Defendant may also employ other means of preserving the Arizona Beverage Products, like a hermetic seal, does not change ascorbic acid's function as a preservative.

Meyers Decl. ¶ 37.

**Plaintiff's Claims Are Consistent with Federal Law**

44.  Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

45.  Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that that are not governed by 21 C.F.R. § 101.13. *See* 21 C.F.R. § 101.65(b)(2). Since the FDA has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.").

**Plaintiffs And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

46.  Plaintiffs and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were led to believe were preservative-free, but consumers then received preservative-laden Products, which have significantly less value. Plaintiffs and Class members were thus deprived of the benefit of their bargains. Plaintiffs and Class members would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth about them. Plaintiffs and Class

members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

47. By representing that the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

48. American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[4]

49. Consumers are willing to pay more for unprocessed and less-processed products with no additives because of this association, as well as because of the perceived higher quality, health, and safety benefits associated with preservative-free foods.

50. The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[5]

51. Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

---

[4] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

[5] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[6]

52.    Courts regularly uphold actions based on payment of a price premium due to a seller's misrepresentations. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' . . . . Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendant's "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349.").

---

[6] http://www.alternet.org/food/8-food-trends-watch-2016

**Defendant's Misrepresentations Were Material To, And Would Be Reasonably Relied Upon By, Reasonable Consumers**

53.     Plaintiffs and Class members reasonably relied on Defendant's false and/or misleading representations that the Products were free of preservatives.

54.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them.

55.     A representation that a product has no preservatives is material to a reasonable consumer when deciding to purchase it. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's Products were free of preservatives because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research above). Defendant would not have included these representations on the Product labels if this was not going to influence consumer behavior.

**Defendant Has An Intent To Mislead**

56.     Defendant knew that its "No Preservatives" claims are misleading.

57.     Upon information and belief, Defendant retains food scientists who can apprise it of the preservative properties of citric and ascorbic acids.

58.     Given the premium that consumers attach to preservative-free foods, discussed above, Defendant has a natural interest in misleading consumers as detailed above, as its deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate ("the
> Nationwide Class").

In the alternative, Plaintiffs KAILEY and KUBILIUS seek to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in
> New York during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the New York
> Class").

Also in the alternative, Plaintiff VAN PEEBLES seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in
> California during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate ("the California
> Class").

60.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had

a controlling interest, and the judicial officer to whom this lawsuit is assigned.

61.     Plaintiffs reserve the right to revise Class definitions based on facts learned in the

course of litigating this matter.

62.     This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of

the Federal Rules of Civil Procedure. While the exact number and identities of other Class

members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of

all Class members is impracticable.

63.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

      a.    whether claiming "No Preservatives" on Products containing citric acid and/or ascorbic acid is false and misleading;

      b.    whether Defendant deprived Plaintiffs and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant warranted;

      c.    whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

      d.    whether Defendant should be barred from marketing the Products as having "No Preservatives."

64.     Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, New York law, California law, and the laws of the other 48 states and the District of Columbia. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

65.     Plaintiffs will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

66.     Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

68.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

69.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

predominate over any questions affecting only individual members, and a class action is superior
to other available methods for fairly and efficiently adjudicating the controversy.

70.     The prosecution of separate actions by members of the Classes would create a risk
of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.
Additionally, individual actions may be dispositive of the interest of all members of the Classes,
although certain Class members are not parties to such actions.

71.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs
seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's
systematic policies and practices make declaratory relief with respect to the Classes as a whole
appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer
protection laws of other states and the District of Columbia to the extent New York consumer
protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the
New York Class)*

72.     Plaintiffs reallege and incorporate herein by reference the allegations contained in
all preceding paragraphs, and further allege as follows:

73.     Plaintiffs brings these claim on behalf of themselves and the other members of the
Nationwide Class for an injunction for violations of New York's Deceptive Acts or Practices Law
("NY GBL § 349").

74.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class,
Plaintiffs KAILEY and KUBILIUS bring this claim individually and on behalf of the members of

the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

75.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

76.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

77.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

78.     The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as free of preservatives is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

79.     The foregoing deceptive acts and practices were directed at consumers.

80.     Defendant should be enjoined from representing "No Preservatives" on the Product labels pursuant to NY GBL § 349.

81.     Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

82.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

83.     Plaintiffs brings these claims and on behalf of themselves and other members of the Nationwide Class for Defendant's violations of NY GBL § 349.

84.     Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiffs KAILEY and KUBILIUS bring this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

85.     Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

86.     Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

a.      Defendant misrepresents or misleadingly advertises that the Products have "No Preservatives" with an intent to cause Plaintiffs and Class members to believe that they are a healthy alternative in comparison to competitors;

b.      Defendant caused Plaintiffs and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

c.      Defendant made material representations and statements of fact to Plaintiffs and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

87.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as having "No Preservatives" are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

88.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

89.     Defendant's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

90.     The foregoing deceptive acts and practices are directed at consumers.

91.     The foregoing deceptive acts and practices proximately caused Plaintiffs and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiffs and Class members are entitled to recover compensatory damages, statutory damages,

punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

## COUNT III

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

92.     Plaintiffs realleges and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

93.     Plaintiffs bring this claim individually, as well as on behalf of members of the Nationwide Class, for violations of NY GBL § 350.

94.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiffs KAILEY and KUBILIUS bring this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

95.     Defendant has been and/or is engaged in the "conduct of . . . business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

96.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a(1).

97.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

98.     Defendant's affirmative misrepresentations or deceptions of "No Preservatives" are material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

99.     Defendant has violated N.Y. Gen. Bus. Law § 350 because its "No Preservatives" representations were material to and likely to deceive a reasonable consumer.

100.    Plaintiffs and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

101.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiffs and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT IV**

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
CAL. CIV. CODE § 1750,** *et seq.*
*(brought individually and on behalf of the California Class)*

102.    Plaintiff VAN PEEBLES realleges and incorporates each and every allegation contained above as if fully set forth herein and further allege as follows:

103.    Plaintiff VAN PEEBLES brings this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

104.    Plaintiff VAN PEEBLES and California Class members are consumers who purchased the Product for personal, family or household purposes. Plaintiff VAN PEEBLES and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

105.    The Products that Plaintiff VAN PEEBLES and other Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

106.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA. They extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

107.    Defendant's deceptive labeling of its Products as containing "No Preservatives" violates federal and California law.

108.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a) (5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the Products' real ingredients and characteristics.

109.    Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular standard, quality or grade of the goods.

110.    Cal. Civ. Code § 1770(a) (9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

111.    Plaintiff VAN PEEBLES and the California Class members are not sophisticated experts about the character, effectiveness, nature, level, grade, ratings of the Products. Plaintiff VAN PEEBLES and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

112.    Plaintiff VAN PEEBLES and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations, which caused the Products to be sold at prices higher than their value, thus losing the benefit of their bargains; and (c) the Products did not have the characteristics, benefits, or quantities promised.

113.    On or about August 16, 2018, prior to filing this action, a CLRA notice letter was served on Defendant ARIZONA BEVERAGE COMPANY, LLC, which complies in all respects with California Civil Code § 1782(a). Plaintiff VAN PEEBLES sent ARIZONA BEVERAGE COMPANY, LLC on behalf of himself and the California Class, a letter via certified mail, return receipt requested, advising Defendant ARIZONA BEVERAGE COMPANY, LLC that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full

restitution by refunding the monies received therefrom. A true and correct (unsigned) copy of Plaintiff VAN PEEBLES's CLRA letter is attached hereto as **EXHIBIT D**.

114.    Wherefore, Plaintiff VAN PEEBLES and the Class seek damages, restitution, and injunctive relief for Defendant's violations of the CLRA.


### COUNT V

**VIOLATION OF CALIFORNIA'S UNFAIR COMPEITION LAW,
CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.*
*(brought individually and on behalf of the California Class)*

115.    Plaintiff VAN PEEBLES realleges and incorporates each and every allegation contained above as if fully set forth herein and further allege as follows:

116.    Plaintiff VAN PEEBLES brings this claim individually and on behalf of the members of the California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

117.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

118.    Defendant's labeling violates federal and California because it represents the Product as free of preservatives when it actually contains preservatives.

119.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(r)(1)(a), California Health & Safety Code § 110670, the CLRA, and other applicable law as described herein.

120.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is

immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and its failure to comply with the FDCA and California law offends the public policy advanced by the FDCA "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

121.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff VAN PEEBLES and the California Class to believe that the "No Preservatives" representation on the Product was lawful, true, and not intended to deceive or mislead the consumers.

122.    Plaintiff VAN PEEBLES and the California Class acted reasonably when they purchased the Product based on their belief that Defendant's representations were true and lawful.

123.    Plaintiff VAN PEEBLES and the Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Product on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Product due to Defendant's misrepresentations, which caused the Products to be sold at prices higher than their value, and were deprived the benefit of their bargains; and (c) the Products did not have the characteristics or benefits promised.

## COUNT VI

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, *et seq.*
#### (brought individually and on behalf of the California Class)

124.    Plaintiff VAN PEEBLES realleges and incorporate each and every allegation contained above as if fully set forth herein and further alleges as follows:

125.    Plaintiff VAN PEEBLES brings this claim individually and on behalf of the California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

126.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

127.    Defendant engaged in a scheme of offering misbranded beverages for sale to Plaintiff VAN PEEBLES and the Class members by way of product packaging, labeling, and other promotional materials, including the Internet. These materials misrepresented the true content and nature of the beverages. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, et seq. in that the Products' packaging, labeling, and promotional materials were intended as inducements to purchase Defendant's Products, and are statements disseminated by Defendant to Plaintiff VAN PEEBLES and California Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

128.    Defendant's deceptive "No Preservatives" claims violate federal and California law because the Products so labeled contain preservatives.

129.    Defendant violated § 17500, *et seq.* by misleading Plaintiff VAN PEEBLES and the California Class to believe that the "No Preservatives" claims made on the Product were true as described herein.

130.   Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded.

131.   Plaintiff VAN PEEBLES and the California Class lost money as a result of Defendant's FAL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations, which caused the Products to be sold at prices higher than their value, and were deprived of the benefit of their bargain; and (c) the Products did not have the characteristics, benefits, or quantities promised.

## COUNT VII

## COMMON LAW FRAUD

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)*

132.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

133.   Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

134.   Plaintiffs and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain preservatives. They would not have purchased the Products had they known Defendant's "No Preservative" claims were false.

135.   Defendant knew and intended that Plaintiffs and the Class members would rely on its misrepresentations.

136.    Plaintiffs and Class members have been injured as a result of Defendant's fraudulent conduct.

137.    Defendant is liable to Plaintiffs and Class members for damages sustained as a result of Defendant's fraud.

## COUNT VIII

## BREACH OF EXPRESS WARRANTIES

*(brought individually and on behalf of the Nationwide Class under New York express warranty law or, in the alternative, on behalf of the New York and California Classes under those states' respective laws)*

138.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

139.    Defendant provided Plaintiffs and other Class members with written express warranties that the Products were free of preservatives.

140.    These claims were affirmations of fact. These affirmations of fact became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiffs and Class members attached importance to Defendant's claims.

141.    Defendant breached the terms of its express warranty to Plaintiffs and Class members by providing Products that lacked the qualities promised.

142.    On or about August 16, 2018, prior to filing this action, a notice letter was served on Defendant ARIZONA BEVERAGE COMPANY, LLC on behalf of Plaintiffs and the Classes, a letter via certified mail, return receipt requested, advising Defendant ARIZONA BEVERAGE COMPANY, LLC that it is in breach of its warranties under the laws of New York and California, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct (unsigned) copy of Plaintiffs' letter is attached

hereto as **EXHIBIT D**. Plaintiffs provided Defendant sufficient opportunity to cure its breach of warranty, but were rebuffed.

143.    As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members suffered damages in an amount to be determined by the Court and/or jury, in that they purchased and paid for Products that did not conform to what Defendant promised in its promotion, marketing and advertising. They were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than was warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action, appointing Plaintiffs as representatives of the Nationwide Class;

b. In the Alternative, an Order appointing Plaintiffs KAILEY and KUBILIUS as representatives of the New York Class and appointing Plaintiff VAN PEEBLES as representative of the California Class;

c. An Order appointing the undersigned attorney as Class Counsel in this action;

d. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

e. All recoverable compensatory and other damages sustained by Plaintiffs and Class members;

f. Actual and/or statutory damages for injuries suffered by Plaintiffs and Class members in the maximum amount permitted by applicable law;

g. An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiffs and all Class members, up to the amounts paid for the Products;

h. Statutory pre-judgment and post-judgment interest on any amounts;

i. Payment of reasonable attorneys' fees and costs; and

j. Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: October 3, 2018

Respectfully submitted,



By:     */s/ C.K. Lee*
            C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
Anne Seelig (AS3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*